I. V. EDGERTON, Appellee, vs. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed June 16, 1909.*

1. MUNICIPAL COURTS—*fact that a plaintiff in municipal court misnames his action does not defeat his rights.* A judgment of the municipal court of Chicago against one, only, of two or more defendants in a suit to recover damages for loss of freight may be sustained as a judgment for tort even though the statement of the claim is in the form of an action on contract, since, as no written pleadings are required in such court, the same rule applies as governs forms of actions before justices of the peace.

2. SAME—*when section 286 of the Municipal Court act is not in point.* Section 286 of the Municipal Court act, (Hurd's Stat. 1908, p. 675,) providing that "it shall be the duty of the Supreme Court or the Appellate Court, as the case may be, to decide such case upon its merits as they may appear from such statement or stenographic report or reports signed by the judge," is not in point upon the question of proper parties to a suit by a consignor against the carrier for damages for loss of shipment.

3. CARRIERS—*a consignor may sue carrier for damages for loss of freight.* A consignor has such special property in the goods as entitles him to maintain an action of tort or assumpsit against the carrier, either as carrier or warehouseman, to recover damages for the loss of the goods. (*Great Western Railroad Co.* v. *McComas,* 33 Ill. 185, followed.)

4. SAME—*consignee may sue carrier in tort for loss of freight.* A consignee, even though the goods are consigned to him to sell on commission, may maintain an action of tort against the carrier to recover for loss of the goods.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding.

M. L. BELL, (BENJAMIN S. CABLE, of counsel,) for appellant:

In an action of tort against a common carrier plaintiff must show a general or special title to the goods. Hutch-

inson on Carriers, (3d ed.) secs. 1304-1315; *Cobb* v. *Railroad Co.* 88 Ill. 394.

ELA, GROVER, MARCH & ECKERT, for appellee:

Title to personal property does not pass while anything remains to be done by the vendor or until there is actual · delivery of the property to the vendee. *Frost* v. *Woodruff,* 54 Ill. 156; *O'Keefe* v. *Kellogg,* 15 id. 347; *Richardson* v. *Rardin,* 88 id. 125; *Huschle* v. *Morris,* 131 id. 587.

Where property is delivered to a common carrier for transportation the consignor may sue for the non-delivery of the same. He has such a special property in the goods as to give him the right of action. So may the real owner sue, and so may the consignee. *Railroad Co.* v. *McComas,* 33 Ill. 186; *Railroad Co.* v. *Shea,* 66 id. 471; 2 Redfield on Railroads, sec. 191.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action of the fourth class under the Municipal Court act, brought in the municipal court of Chicago, wherein the appellee recovered a judgment against appellant for $275. The cause was taken by a writ of error to the Appellate Court for the First District, where the judgment was affirmed by a divided court. A certificate of importance was granted, and this appeal has followed.

Actions of this class, under said act, are brought without forms of written pleading. (Hurd's Stat. 1908, sec. 3, p. 665.) The statement of claim appears to have been made in form as if it were an action on contract. The suit was originally brought against appellant, only. Later the Hoosac Tunnel Line and the Wabash Railroad Company were also joined as defendants. After hearing, the suit was dismissed as to the two latter defendants by the court. It is conceded by all the parties that if this were an action on contract, on the facts as stated here, all parties defendant being served, the judgment must be entered

against all the defendants or none, (*Briggs* v. *Adams,* 31
Ill. 486; *Grand Pacific Hotel Co.* v. *Pinkerton,* 217 id. 61;
*Cairo and St. Louis Railroad Co.* v. *Easterly,* 89 id. 156;
*Merrifield* v. *Cottage Piano Co.* 238 id. 526;) and that in
order to have this judgment stand against one of the de-
fendants only, this must be held to be an action in tort.
As to this class of cases under the Municipal Court act,
where no written pleadings are required, the same rule will
govern as controls the form of actions before justices of
the peace.   We have held that "it is the well settled prac-
tice that in such courts [*i. e.,* where written pleadings are
not required,] the party suing need not even name his ac-
tion, or if misnamed, that will not affect his rights, if upon
hearing the evidence he appears to be entitled to recover
and the court has jurisdiction of the defendant and of the
subject matter of the litigation." (*Pollock* v. *McClurken,*
42 Ill. 370; *Rehm* v. *Halverson,* 197 id. 378; *Swingley*
v. *Haynes,* 22 id. 214; *Ballard* v. *McCarty,* 11 id. 501.)
This judgment, therefore, may be upheld as an action of
tort though entered against appellant alone, in so far as
the form of the action is concerned.

On April 21, 1904, H. Fishback shipped from Beatrice,
Nebraska, to appellee, who was doing a commission busi-
ness on South Water street, in Chicago, a car of eggs *via*
appellant's railway.   The evidence discloses that this car
reached Chicago and was placed in the yards of appellant
in the usual and customary place for the delivery of car-
load shipments of eggs, on a team track at Twelfth and
Taylor streets.   Just when appellee received notice is not
clear, but on April 25 he gave an order, through one of his
salesmen, to the appellant company to allow an inspection
of the car by said salesman and a representative of Mr.
Roberts.   These two men,—Scheele, representing appellee,
and Ennis, representing Roberts,—went to the yard-master
of appellant with the order from appellee, and on the seals
of the car being broken the two men in question inspected

the eggs, consuming from one to two hours in the work, but did not remove any of them. They did not count the cases or notice that any of them were missing. They told the yard-master after they were through that they wanted the car sealed again, but did not tell him whether they intended to unload the car or re-route it. Roberts purchased the eggs from Edgerton the same day, and an order was given by both parties to the appellant company to re-route the car over the Wabash railroad and Hoosac Tunnel Line to Albany, New York. The car was delivered the next day, April 26, to the Wabash Railroad Company by appellant. It is stipulated that the car was re-sealed by the appellant company before delivering to the Wabash company, and that these seals were intact and unbroken at the time it was received in Albany, New York. When the car seals were broken in the latter city and the eggs examined it was found that fifty-three cases were missing. The evidence is uncontroverted that the car contained these fifty-three cases when it was loaded and shipped over appellant's road from Beatrice, Nebraska. From the evidence in the record the conclusion is inevitable that these fifty-three cases of eggs were in some way taken from the car between the time it was taken possession of by the appellant company in Beatrice, Nebraska, and the time of its delivery, sealed, to the Wabash company, in Chicago, on April 26.

The only serious question in this case is whether appellee was the proper party to bring this action. It is contended by appellant that Roberts was the owner after the sale to him of the car-load of eggs and also at the time the order was received by the appellant company to deliver the car to the Wabash Railroad Company, and that under the rule of law that where a person has no property or interest in the goods he cannot sue in an action *ex delicto* for a breach of duty by the carrier, (3 Hutchinson on Carriers,—3d ed.—sec. 1314,) the appellee could not bring this action. The decisions in the various jurisdictions on this

question cannot be harmonized, and the distinctions between the rights of parties when the action is in assumpsit and when in tort are not always clearly defined. This court, in *Great Western Railroad Co.* v. *McComas,* 33 Ill. 185, in an action on the case for negligence, stated (p. 187) : "The company made the contract to carry and deliver, with Mc-Comas, and there is no principle better settled than that the consignor, for a breach of the duty, be he but a bailee, may sue. He has such a special property in the goods as to give him the right of action. So may the real owner sue, and so may the consignee. The company cannot excuse themselves, in a suit brought by the consignor for negligence, that the real title was in his bailor, unless they show the property has been taken out of their possession by him without any injury or injustice to the lender or bailor." This case reviewed at some length the English and American authorities on this question, and held that the railroad company was the agent of McComas, of whom it received the property, and was not at liberty to dispute his title in an action brought by him. The rule laid down in this decision was quoted with approval by this court in *Chicago and Alton Railroad Co.* v. *Shea,* 66 Ill. 471, and while the latter case was an action in assumpsit, no modification was made of the former rule on that account. The case of *Great Western Railroad Co.* v. *McComas, supra,* has never been overruled by this court, and it is understood in other jurisdictions to be the law of this State. 4 Elliott on Railroads, (2d ed.) sec. 1413*a;* 6 Cyc. sec. 510, note 78; *Carter* v. *Southern Railway Co.* (Ga.) 50 L. R. A. 354.

In Angell on Carriers (5th ed. sec. 493,) that author quotes with approval from *White* v. *Bascom,* 28 Vt. 268, the statement that though the case of *Freeman* v. *Birch,* 28 Eng. Com. L. R. 543, "clearly establishes the right of the bailee to sue, yet this must not be understood necessarily to exclude the bailor from the exercise of a similar right,—supposing, that is to say, he chooses to step in and

anticipate the bailee in bringing an action,—a conclusion which seems to be deducible from the general state and condition of property under bailment, which is, as it were, *in dubio* between the parties, and vested for some purposes in the bailee and for some in the bailor. The right of property being thus floating and undetermined, it seems to follow that the right of action which arises from it must partake of the same properties, and must so continue until it is finally fixed and determined by one or the other party appropriating it to himself." The author continues in the same section: "It cannot be denied that the right of an agent or a bailee, having a special property in the goods which are the subject matter of the transaction, to sue for any default of the carrier in respect to them while in the course of transportation, is subservient to the right of the principal to interfere and bring the action in exclusion of the agent's or bailee's right. The rule in such cases is stated by Parke, B., to be, that either the bailor or the bailee in such cases may sue, and whichever first obtains damages it is a full satisfaction." The case above referred to in which the rule was so stated is *Nicolls* v. *Bastard,* 2 Crom., M. & R. 659. See, also, for further discussion of this subject, 2 Redfield on the Law of Railways, (6th ed.) sec. 191; *Green* v. *Clark,* 13 Barb. 57; *Elkins* v. *Boston and Maine Railroad Co.* 19 N. H. 337; *Gosling* v. *Birnie,* 20 Eng. C. L. Rep. 153; VanZile on Bailments and Carriers, (2d ed.) chap. 11.

From the evidence it cannot be ascertained when said fifty-three cases of eggs were taken out of the car. In the present state of the record it is very reasonable to suppose that they were removed before the sale by Edgerton to Roberts. The reasoning, therefore, in the case of *White* v. *Bascom, supra,* applies with great force to the facts in this case.

Appellant contends that appellee had no such special interest as to entitle him to bring this action, on the ground

that appellee himself testified that the goods were shipped to him to sell on commission. Fishback, however, testified that he had sold them to Edgerton. Even assuming that they were shipped to appellee to be sold on commission, he plainly had such an interest, under *Great Western Railroad Co.* v. *McComas, supra,* and the authorities heretofore cited, that he could rightly recover in an action of tort against the appellant.

It is suggested in the argument that appellant's duty as a common carrier had ceased after the car was placed on this teaming track in Chicago and that thereafter it only had responsibility as a warehouseman, under the rules frequently laid down by this court. (*Gregg* v. *Illinois Central Railroad Co.* 147 Ill. 550, and cases cited; *Schumacher* v. *Chicago and Northwestern Railway Co.* 207 id. 199, and cases cited.) We do not find it necessary to decide whether this recovery is against the appellant as common carrier or warehouseman, for we think that, even if its duties as a common carrier had ended, it clearly was liable as warehouseman. (*Funkhouser* v. *Wagner,* 62 Ill. 59; *Cumins* v. *Wood,* 44 id. 416; VanZile on Bailments and Carriers,— 2d ed.—secs. 185-193, inclusive.) Under the authorities heretofore cited, no distinction is made between the right of a consignor to bring suit against common carriers and his right to bring suit against warehousemen, either in an action of tort or *ex contractu.*

There is some discussion in the briefs as to whether this judgment can be upheld under section 286 of the Municipal Court act, (Hurd's Stat. 1908, p. 675,) which reads: "It shall be the duty of the Supreme Court or the Appellate Court, as the case may be, to decide such case upon its merits as they may appear from such statement or stenographic report or reports signed by the judge." We do not consider that section of the Municipal Court act in point on the question of proper parties to this cause.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*